T.C. Memo. 1996-533


UNITED STATES TAX COURT


BARRY D. AND SUZANNE B. WHALLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17230-94.                    Filed December 2, 1996.


Barry D. Whalley, pro se.

<u>Marion Robus</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in, and penalties on, petitioners' Federal income tax for taxable years 1991 and 1992 as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1991 | $12,437   | $2,487               |
| 1992 | 13,908    | 2,782                |

After concessions by the parties,[1] the issues for decision are: (1) Whether pursuant to section 162, petitioners may deduct Schedule A job-related education expenses in excess of the amounts allowed by respondent for the taxable years 1991 and 1992.[2] We hold they may, to the extent set out below. (2) Whether pursuant to section 162, petitioners may claim Schedule A miscellaneous itemized deductions for the taxable years 1991 and 1992. We hold they may, to the extent set out below. (3) Whether pursuant to section 162, petitioners may deduct Schedule C business expenses in excess of the amounts allowed by respondent for the taxable years 1991 and 1992. We hold they may, to the

_____

[1] For 1991, respondent concedes that petitioners are allowed a Schedule A deduction of $1,536 for the cost of unreimbursed job-related education courses taken by Mrs. Whalley. Respondent concedes that petitioners are allowed a Schedule C deduction of $200 for advertising expenses, $118 for supplies, $125 paid to the California Association of Licensed Investigators, and $100 for the renewal of petitioner's private investigator's license. Respondent concedes that petitioner is not required to include in gross income $97 as a dividend. Petitioner concedes that he erroneously claimed a $216 bad debt deduction and a deduction for a $14 parking citation.
For 1992, respondent concedes that petitioners are allowed a Schedule A deduction of $729 for the cost of unreimbursed job-related education courses taken by Mrs. Whalley and $240 for tax preparation fees. Respondent concedes that petitioners are allowed a Schedule C deduction of $218 for advertising expenses, $125 paid to the California Association of Licensed Investigators, and two separate $20 payments made to the Northern California Fraud Investigators Association. Petitioner concedes that he erroneously claimed a $150 bad debt deduction.

[2] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar.

extent set out below.  (4) Whether the farm activity conducted by petitioners was an activity engaged in for profit for the taxable years 1991 and 1992 under section 183.  We hold it was not.  (5) Whether petitioners are liable for penalties for negligence or intentional disregard of rules or regulations for the taxable years 1991 and 1992 under section 6662(a).  We hold they are.[3]

## FINDINGS OF FACT

A few of the facts have been stipulated and are so found.[4] The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference.  At the time the petition in this case was filed, petitioners, husband and wife, resided in Livermore, California.  The term "petitioner" refers to Barry D. Whalley.

Petitioners timely filed joint Federal income tax returns, Forms 1040, for 1991 and 1992.  Those returns reflected wages paid by the City of Hayward Police Department to Lieutenant Suzanne B. Whalley (Mrs. Whalley), in the amounts of $70,198 for

---

[3]    Respondent determined, and we agree, that for 1991 and 1992, certain computational adjustments should be made, which would: (1) Increase petitioners' self-employment tax liability and self-employment tax deduction,(2) reduce petitioners' itemized deductions, and (3) preclude petitioners from claiming the Earned Income Credit.  These are mathematical adjustments that the parties can make in their Rule 155 computation.

[4]    The pretrial order required the parties to stipulate all facts and documents to the extent possible.  Nevertheless, petitioners wasted the Court's time, effort, and resources introducing more than 65 exhibits into evidence, many of which could and should have been stipulated.

1991 and $77,727 for 1992.  For both years in issue, no Federal income tax was withheld, as reflected on the Forms W-2 issued for Mrs. Whalley by the Hayward Police Department.

For 1991 and 1992, petitioners claimed total itemized deductions on Schedule A of $28,211 and $34,148, respectively. They deducted $5,283 in 1991, and $7,242 in 1992 for continuing education courses, professional meetings, and conferences.  For 1992, they deducted $2,066 for union and professional dues and $2,024 for the cost of purchasing and cleaning Mrs. Whalley's uniforms.  A list of the Schedule A miscellaneous deductions is attached as appendix A.

For 1991 and 1992, petitioners filed Schedules C for a business called Twin Star Investigations (TSI).  The Schedules C reflect gross income of $4,524 and expenses of $25,546, for 1991, and gross income of $4,892 and expenses of $32,616, for 1992.  A list of the Schedule C deductions is attached as appendix B.

TSI was operated solely by petitioner for approximately 8 years, from 1984 to 1992.  Petitioner billed clients for approximately 181 hours in 1991 and 163 hours in 1992.  His rate for investigative work ranged from $25 to $35 per hour.  His rate for office work and travel time was $15 per hour. In 1991, he billed clients for mileage at 35 cents per mile and also charged them for lodging, meals, equipment, supplies, photographs, and fees paid.  Petitioner's cellular telephone, purportedly used in connection with his business, was not listed under TSI.

Petitioner has never reported a profit from TSI on his tax return.

For 1991 and 1992, petitioners filed Schedules F for an activity called Twin Star Ranch (TSR). The Schedules F reflect gross income of $475 and expenses of $28,327, for 1991, and gross income of $1,050 and expenses of $37,747, for 1992. A list of the Schedule F deductions is attached as appendix C.

Petitioners started their 7½-acre ranch in 1982, after petitioner retired. Petitioners have never reported a profit from TSR on their tax return. They did not take any farming or animal husbandry courses in college. From 1988 through the time of trial, however, petitioner attended seminars at the University of California at Davis covering a variety of animal-related topics, such as breeding, raising, feeding, and medically caring for animals.

In 1991, petitioners' farm consisted of a flock of 20 to 25 sheep, some chickens and peacocks, one horse, and four cattle. In 1991, petitioners advertised a cockatiel and a ram for sale in the local newspaper. In 1992, petitioners did not advertise anything for sale from their farm. In 1992, petitioners purchased two more horses. None of petitioners' horses were stallions, and they did not breed horses in either 1991 or 1992. In 1991 and 1992, petitioners sold only sheep and eggs; they deducted $90 for butchering in 1992. Petitioners' farm had an unlisted phone number.

Except for some minor items, all of the Schedule F expenses claimed by petitioners were incurred in connection with their horses. For example, in 1991, petitioners deducted over $1,800 for the cost of veterinarian's fees and medicine, tickets to the rodeo association, horse magazine subscriptions, and other horse-related items. In 1992, petitioners deducted over $13,000 in connection with their horses, a substantial portion of which included the cost of constructing a horse training arena, which petitioners' daughter used for riding practice.

Petitioner completed the equivalent of 3 years of college. Before engaging in TSI and TSR, petitioner was a police officer for 17 years in the City of Oakland, retiring as a sergeant in 1982. After retiring from the police force, petitioner worked as a Chief Special Investigator for World Airlines, where he remained for 2 years.

For the years in issue, petitioner owned two vans, a pickup truck, and a Porsche.

OPINION

Issue 1. Schedule A Education Expenses

Respondent determined that for 1991 and 1992, petitioners are not entitled to deduct job-related education expenses, including mileage, parking, meals, lodging, and other miscellaneous expenditures claimed by Mrs. Whalley in excess of the amounts conceded by respondent, because petitioners have failed to meet the requirements of sections 162 and 274 and the

regulations thereunder.  For 1991 and 1992, respondent concedes $1,536[5] and $729, respectively.

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>Durando v. United States</u>, 70 F.3d 548, 550 (9th Cir. 1995).  Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed.  Rule 142(a); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  This includes the burden of substantiation.  <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 162(a) allows a deduction for ordinary and necessary expenses of carrying on a trade or business.  Education expenditures, including transportation from work to class, parking, and travel expenses while away from home in connection with such education are deductible business expenses when the education maintains or improves the skills required by a taxpayer in his or her employment or if the education meets the express

---

[5]    For 1991, respondent concedes $1,536, representing petitioners' checks made out to California State University at Hayward, the copy center, and the bookstore.  We note that the check amounts listed by respondent for 1991 total only $1,490 and not $1,536.  Based on the record, we infer that respondent inadvertently failed to include a check in the amount of $45.80 made out to CSUH, which would bring the total up to $1,536.

requirements of the taxpayer's employer.  Sec. 1.162-5(a)(1), Income Tax Regs.

A taxpayer's general statement that his or her expenses were incurred in pursuit of a trade or business normally is not sufficient to establish that the expenses had a reasonably direct relationship to that trade or business.  Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), affd. per curiam 409 F.2d 1359 (2d Cir. 1969). Rather, a taxpayer must maintain records sufficient to permit verification of income and expenses.  Sec. 6001; sec. 1.6001-1, Income Tax Regs.  That a taxpayer cannot prove the exact amount of an otherwise deductible item is not fatal, because generally, unless precluded by section 274, we may estimate the amount of such an expense and allow the deduction to that extent.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). The estimate, however, must have some reasonable evidentiary basis.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

A. Commuting  Expenses

Respondent determined that petitioners are not entitled to deduct expenses incurred for approximately 9,300 and 4,800 miles[6] driven during 1991 and 1992, respectively, in connection with Mrs. Whalley's job-related education.

---

[6]     The standard mileage allowances for 1991 and 1992 were 27.5 and 28 cents per mile, respectively, for all miles of use for business purposes.  Rev. Proc. 90-59, 1990-2 C.B. 644; Rev. Proc. 91-67, 1991-2 C.B. 887.  There is some indication, based on the documents submitted at trial that petitioners used the 27.5 cents per mile flat rate for both 1991 and 1992 in determining the amount of their deduction for business mileage driven.

Under section 274(m)(2), no deduction is allowed "for travel as a form of education." However, travel expenses to get to a school, seminar, or conference where business-related education is obtained can still be deductible. Sec. 1.162-5(d), Income Tax Regs. Furthermore, commuting expenses from a taxpayer's home to his or her place of study are nondeductible personal expenses. Zimmerman v. Commissioner, 71 T.C. 367, 370 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Shelton v. Commissioner, T.C. Memo. 1996-444; secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.

Mrs. Whalley drove to class during the spring, summer, winter, and fall. She kept a daily logbook to substantiate the actual miles driven during each semester. However, at trial, petitioner testified that Mrs. Whalley drove back and forth from home to class, rather than from work to class. Mrs. Whalley did not testify; consequently, we conclude that such expenses are personal commuting expenses and therefore are not deductible under section 262.

B. Travel Expenses While Away From Home

For 1991 and 1992, petitioners deducted $146 and $664, respectively, for the cost of meals and lodging incurred by Mrs. Whalley while away from home at business conferences. Petitioners also deducted expenses for approximately 4,700 and

5,200 miles[7] driven by Mrs. Whalley during 1991 and 1992, respectively, from home to professional meetings and conferences.

Taxpayers may deduct expenses incurred while traveling away from home if the trip is primarily to obtain education that has the requisite relation to the taxpayer's business. Sec. 1.162-5(e)(1), Income Tax Regs. Thus, travel expenses incurred to attend a seminar or continuing education course may be deductible. Sec. 1.162-5(e)(2), Income Tax Regs. To deduct expenses incurred for travel, meals, and lodging while away from home on job-related education, a taxpayer must satisfy the stringent substantiation requirements of section 274(d) and the regulations thereunder. A taxpayer must substantiate each element of an expenditure incurred for travel, meals, and lodging while away from home either by adequate records or by sufficient evidence corroborating his or her own statement. Sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

For travel expenses, including meals and lodging, a taxpayer must substantiate: (1) The amount of such expense, (2) the time and place such expense was incurred, and (3) the business purpose for which such expense was incurred. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) specifically bars a taxpayer from claiming a

---

[7]    As we previously indicated, the standard mileage allowances for 1991 and 1992 were 27.5 and 28 cents per mile, respectively. Rev. Proc. 90-59, 1990-2 C.B. 644; Rev. Proc. 91-67, 1991-2 C.B. 887.

deduction on the basis of any approximation or the unsupported testimony of the taxpayer. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

In 1991, Mrs. Whalley drove 590 miles in connection with three different business conferences she attended in California. She took a management class in Monterey, a public service seminar in San Mateo, and a supervisory skills program in San Jose. Petitioner's testimony coupled with the documentary evidence submitted at trial establishes the time and place of the business conferences, that they were attended by Mrs. Whalley for business, and that she drove 590 miles to attend them. Accordingly, petitioners have met the requirements of sections 162 and 274(d) and therefore may deduct the expenses incurred in connection with such mileage.

For 1991 and 1992, however, we sustain respondent's determination as to the balance of the 4,110 and 5,278 miles driven, respectively, by Mrs. Whalley for miscellaneous meetings that she allegedly attended on behalf of the police department. The mileage claimed is not supported by a logbook or diary, but rather consists of a handwritten index created by petitioner. Moreover, petitioner's testimony regarding the alleged business purpose of such mileage traveled is uncorroborated by any testimonial or documentary evidence from Mrs. Whalley or her employer. We note that the absence of such evidence may lead the finder of fact to infer that such evidence, if presented at

trial, subject to respondent's cross-examination, would not have been favorable to petitioners. Kay v. Comissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). This is true where, as here, the party failing to produce such evidence has the burden of proof. Wichita Terminal Elevator Co. v. Commissioner, supra at 1165.

In 1992, Mrs. Whalley deducted $549 for meals and lodging allegedly incurred for two SWAT training classes at San Jose and Fort Ord, and $115 for meals, which she contends were incurred for miscellaneous business trips. Respondent disallowed these deductions for lack of substantiation. Again, Mrs. Whalley's failure to testify, coupled with the fact that petitioners did not submit any receipts or canceled checks to substantiate such expenses, weighs heavily against petitioners. Accordingly, we sustain respondent's determination, except that we allow petitioners to deduct $48.75, reflected in one receipt submitted in connection with Mrs. Whalley's lodging at Fort Ord.

C. Registration Fees

Petitioners deducted registration fees of $134 and $582 in 1991 and 1992, respectively, for business conferences attended by Mrs. Whalley.

For 1991, petitioners submitted invoices which establish that Mrs. Whalley did indeed pay $134 in registration fees for

the San Mateo and San Jose conferences.  Accordingly, we allow petitioners to deduct this amount.

For 1992, petitioners deducted $582 for a SWAT course allegedly attended by Mrs. Whalley.  To substantiate this expense, petitioners submitted a receipt signed by a "Kadie" for that amount.  Petitioner, however, submitted the same receipt to substantiate the cost of chairs he purportedly purchased from Classic Oak for use in his home office.  Therefore, the receipt is not reliable evidence of either expense.  Accordingly, petitioners have failed to meet their burden of proof with respect to this item.

D. Parking Expenses

In 1991 and 1992, Mrs. Whalley deducted $225 and $305, respectively, for alleged parking costs at California State University at Hayward.  Petitioner asserts that Mrs. Whalley was "required to pay cash to park at the [school] meters."  Thus, she did not have any parking receipts.  Rather, to substantiate these expenses petitioners submitted daily parking permits.  However, the language on the face of the parking permit directly conflicts with petitioner's testimony, because it specifically indicates that day permits are "not valid at parking meters."  Thus, the evidence fails to establish that Mrs. Whalley paid for metered parking at school.  Rather, it indicates that she was provided with daily parking permits enabling her to park without charge.

Issue 2. Schedule A Miscellaneous Itemized Deductions

    A. <u>Union and Professional Dues and Uniform Purchases and Cleaning</u>

    For 1992, Mrs. Whalley deducted on Schedule A, $2,066 for union and professional dues, and $2,024 for the cost of purchasing and cleaning her police uniforms. Respondent disallowed the expenses in their entirety, because petitioners failed to submit any evidence to substantiate these items.

    Mrs. Whalley is a police lieutenant. As such, expenses that she incurs during the taxable year for union and professional dues, as well as the cost of purchasing and cleaning her police uniforms, are treated as ordinary and necessary expenses incurred in carrying on her business. Sec. 162. Moreover, that Mrs. Whalley cannot prove the exact amount spent on such items is not fatal, because under <u>Cohan</u> we may approximate the amount of such expenses. <u>Cohan v. Commissioner</u>, 39 F.2d 540 (2d Cir. 1930). To do so, however, we must have a reasonable evidentiary basis for making such an estimate. <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 743 (1985). Petitioner asserts that at a pretrial meeting, he gave respondent records to substantiate these expenses. However, the records petitioner submitted to respondent were for 1991, and not for 1992, the taxable year in issue.

    Under <u>Cohan</u>, as discussed above, we may estimate petitioners' expenses if we are convinced that they were actually incurred during the taxable year. However, in making such an

estimate, the Court will closely scrutinize a taxpayer whose inexactitude is of his own making.  Cohan v. Commissioner, supra; DeMauro v. Commissioner, T.C. Memo. 1994-460, affd. without published opinion 82 F.3d 404 (3d Cir. 1996).  Given that Mrs. Whalley is a police lieutenant, we can reasonably infer that she incurred cleaning expenses for her uniforms and was required to pay union dues.  However, with respect to the purported purchase of Mrs. Whalley's police uniforms, no evidence was presented to establish that the Hayward Police Department required police officers to purchase their own uniforms.  Petitioners' failure to submit any records to substantiate such expenses weighs heavily against them.  Accordingly, under Cohan, we allow petitioners to deduct $300 for 1992 for the cost of dues and cleaning uniforms.  However, we sustain respondent's determination as to the $3,790 balance.

B. Books and Motivational Tapes

For 1991 and 1992, Mrs. Whalley deducted $36 and $467, respectively, for motivational tapes, cassettes, and books, such as The Confident Woman; as well as magazines and newspapers, such as Self, Working Woman, and the Valley Times.

Petitioners have failed to establish how such expenses are connected to Mrs. Whalley's job as a police officer, and not merely expenses for her own personal growth and entertainment.  Thus, we find that such amounts constitute personal expenditures

and therefore are not deductible.  Sec. 1.262-1(a), Income Tax
Regs.

Issue 3. Schedule C Deductions

Respondent determined that all of petitioner's Schedule C
deductions for 1991 and 1992 are disallowed, because he failed to
meet the requirements of sections 162 and 274.  Petitioner
asserts that each of the Schedule C deductions claimed for his
business was an ordinary and necessary expense paid or incurred
during the taxable years in issue within the meaning of section
162 and section 1.162-1(a), Income Tax Regs., and that each of
these deductions has been sufficiently substantiated pursuant to
sections 162 and 274, both through his oral testimony and the
documentary evidence presented at trial.

A taxpayer can deduct all the ordinary and necessary
expenses paid or incurred during the taxable year in carrying on
a trade or business.  See supra p. 7.  An expense is ordinary if
it is "normal, usual, or customary" in the taxpayer's trade or
business.  Deputy v. du Pont, 308 U.S. 488, 495 (1940) (citing
Welch v. Helvering, 290 U.S. at 114).  An expense is "necessary"
if it is "appropriate and helpful" to the development and
operation of the taxpayer's business.  Welch v. Helvering, supra
at 113.  In determining whether an expense is ordinary and
necessary pursuant to section 162, we generally have focused on
the existence of a reasonably proximate relationship between the

expense and the taxpayer's business and the primary motive or purpose for incurring the expense. Henry v. Commissioner, 36 T.C. 879, 884 (1961).

We now address each category of disallowed deductions independently.

A. Advertising

Petitioner deducted advertising expenses of $510 in 1991 and $317 in 1992. Respondent determined that petitioner was not entitled to any deduction for advertising, but later conceded that petitioner is entitled to deduct $200 for 1991 and $218 for 1992, which represent the costs of yellow page advertising in connection with TSI.

The balance of the 1991 advertising represents amounts made out on TSR checks, not TSI checks, for admission fees to golf tournaments that petitioner claims to have attended for networking purposes. Petitioner testified that he went around, talked, and gave out his business cards to people. However, to meet his burden of proof, petitioner must offer more than a general statement that such expenses were incurred in pursuit of his business in order to sufficiently establish that the expenditures had a reasonably direct relationship to his business. Ferrer v. Commissioner, 50 T.C. at 185. In this case, the evidence presented at trial fails to establish that petitioner's activities at the golf tournament actually had any

direct relationship to the production of business income as required by section 162.

The balance of the 1992 advertising deductions represents amounts paid for raffle tickets and newspaper advertisements. The raffle tickets were a personal expense. Sec. 262. With respect to the newspaper advertisements, petitioner asserts that such expenses were incurred to sell his 1989 Chevrolet van, purportedly used in his business. Petitioner, however, failed to provide invoices at trial to support the purpose of the checks.

Thus, we find that the balance of petitioner's 1991 and 1992 claimed advertising expenses is not deductible.

B. Depreciation, Insurance and Other Automobile-Related Expenses

Petitioner claimed depreciation of $4,100 for 1991 based on a $23,300 purchase contract dated June 1989, for a 1989 Chevrolet van. For 1992, petitioner claimed depreciation of $4,800 based on a sales invoice from an unknown source for a 1993 Ford van purchased for $22,476 in December 1992. The purchase price was paid in full, and nothing was financed.

For 1991 and 1992, petitioner claimed insurance expenses of $587 and $545, respectively. Petitioner claimed 100 percent of the insurance costs for 1991 and 1992 on his Chevrolet van. Petitioner asserts that the insurance claimed for 1992, which was paid by a check made out to Safeco Insurance Co. is for the Ford van. However, the automobile policy premium indicates that the insurance coverage is for a 1989 Chevrolet.

Petitioner also claimed other automobile-related expenses in connection with his business of $756 for 1991 and $8,786 for 1992.

Respondent disallowed the entire amounts for depreciation, insurance, and other automobile-related costs for lack of substantiation under section 274(d).

No deduction shall be allowed with respect to listed property, within the meaning of section 280F(d)(4), unless such deductions satisfy the strict substantiation requirements of section 274(d) and the regulations thereunder.  Included in the definition of listed property under section 280F(d)(4) is any passenger automobile.  Sec. 280F(d)(4)(A)(i).  To substantiate a deduction attributable to listed property, a taxpayer must maintain adequate records or present corroborative evidence to show:  (1) The amount of the expense, (2) the time and place of use of the listed property, and (3) the business purpose for the use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  To substantiate a deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, or a similar record, and documentary evidence which, in combination, are sufficient to establish each element of each expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  To be adequate, a record generally must be written.  Each element of an expenditure or use that must be

substantiated should be recorded at or near the time of that expenditure or use.  Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Thus, under section 274(d), no deduction shall be allowed for expenses incurred for the use of a passenger automobile on the basis of any approximation or the unsupported testimony of the taxpayer.  See, e.g., Ellison v. Commissioner, T.C. Memo. 1994-437.

For 1991 and 1992, petitioner claimed 100-percent business use of his 1989 Chevrolet van.  Petitioner, however, has not met his burden of proof with respect to this issue.  At trial, petitioner submitted two invoices for mechanical work done on the van.  The first invoice, dated December 19, 1991, shows the odometer at 55,248 miles; the second invoice, dated March 25, 1992, shows the odometer at 59,978 miles.  Accordingly, the van was driven 4,730 miles during approximately a 3-month period. Petitioner concedes that he drove the van approximately 20,000 miles per year, which he alleges was for business.  For 1991 and 1992, however, petitioner reported gross income on his Schedules C of only $4,524 and $4,892, respectively, which represent less than 200 billable hours in connection with his investigation business, yet he asks us to find as fact that all 20,000 miles driven on his van were for business purposes.  Given this scenario, such a conclusion is inconceivable.  Furthermore, petitioner failed to establish his actual percentage of business use for the van.

In December of 1992, petitioner purchased a $22,476 Ford van for which he claimed depreciation under MACRS of $4,800.  At trial, however, petitioner did not offer any evidence regarding the percentage of business use for this vehicle.

Under <u>Cohan</u>, we generally may estimate a taxpayer's deductions.  <u>Cohan v. Commissioner</u>, 39 F.2d 540 (2d Cir. 1930).  However, section 274(d) overrides the <u>Cohan</u> rule with respect to listed property and thus specifically precludes the Court from allowing a deduction for automobile expenses on the basis of any approximation or petitioner's unsupported testimony.  Sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Accordingly, we sustain respondent's determination, since petitioner failed to establish the percentage of business use for the two vans, which is a threshold requirement that must be met in order to deduct depreciation, insurance, and other automobile-related expenses incurred in connection with these vehicles.

C. <u>Legal and Professional Fees</u>

For 1991 and 1992, petitioner deducted $123 and $43, respectively, for annual credit card membership fees as a legal and professional expense.[8]  Respondent disallowed the expenses in full on the ground that petitioner failed to establish the percentage of business use for any of the cards in issue.

---

[8]    We note that credit card membership fees should not have been characterized as legal and professional fees.  This classification, however, does not foreclose the deductions.

At trial, petitioner conceded that although he used the credit cards for both personal and business purposes, he used them for personal purposes only in emergencies when he was "caught without money."  Petitioner also testified that he had four other personal credit cards.  Petitioner estimated that he used the credit cards in issue approximately 75 percent for business and 25 percent for personal purposes.  He made this estimate based on the business and personal charges that appeared on the monthly credit card statements.

We find petitioner's estimate of 25-percent personal use to be reasonable.  Accordingly, we allow petitioner to deduct 75 percent of the annual membership fees incurred for 1991 and 1992. Cohan v. Commissioner, supra.

D. Home Office Expenses

For 1991, petitioner deducted home office expenses of $1,444, for a facsimile machine, a facsimile stand, a telephone, and chairs.  For 1992, petitioner deducted home office expenses of $3,385, for chairs, a desk lamp, a computer desk, a computer stand, and a computer and peripheral equipment.  Petitioner testified that he used the business equipment in his home office. For 1991 and 1992, petitioner also deducted utilities of $912 and $957, respectively, representing one-third of the utilities incurred on his personal residence, which he allocated to his home office.  Respondent denied these expenses on the ground that

the home office did not meet the requirements of section 280A, and that petitioners failed to establish the percentage of business use for the assets.

Section 280A(a) provides, as a general rule, that an individual taxpayer is precluded from deducting expenses incurred in connection with the business use of a dwelling unit that is used by the taxpayer during the year as a residence. The general disallowance rule does not prevent a taxpayer from taking any deduction that would otherwise be allowable without regard to the use of the home for business.[9] Sec. 280A(b).

Subject to the income limitation on deductions under section 280A(c)(5), a business-use exception from the general disallowance rule is carved out where a taxpayer can meet certain statutory tests prescribed by section 280A(c)(1). Section 280A(c)(1) permits a taxpayer to deduct expenses allocable to a home office which is exclusively used on a regular basis for one or more of the following three purposes: (1) As the taxpayer's principal place of business, (2) as the place where the taxpayer meets with customers, clients, or patients in the normal course of business, and (3) in the case of an unattached separate structure, in connection with the taxpayer's business. Sec. 280A(c)(1); Commissioner v. Soliman, 506 U.S. 168 (1993); Cao v.

---

[9] Under sec. 280A(b), deductions which are otherwise allowable without regard to any connection with a trade or business include the deduction for: (1) Interest under sec. 163, subject to the sec. 163(h)(1) personal interest restriction, (2) real estate taxes under sec. 164, and (3) casualty losses under sec. 165.

Commissioner, T.C. Memo. 1994-60, affd. without published opinion 78 F.3d 594 (9th Cir. 1996).

As a general rule, section 280F(d)(4) treats any computer or peripheral equipment as listed property. Sec. 280F(d)(4)(A)(iv). To claim expensing or depreciation for such property pursuant to sections 179 and 280F, respectively, a taxpayer must establish that business use exceeds 50 percent. Sec. 280F(b)(3); sec. 1.179-1(d), Income Tax Regs.[10] Furthermore, section 274(d)(4) precludes a taxpayer from claiming a deduction for listed property as defined in section 280F(d)(4)(A), unless the taxpayer meets the strict substantiation requirements of section 274(d) and the regulations thereunder. See supra p. 19.

Section 280F(d)(4)(B) provides an exception to the listed property rules for any computer or peripheral equipment used exclusively at a regular business establishment. A home office is treated as a regular business establishment provided the office meets the requirements of section 280A(c)(1). Sec. 280F(d)(4)(B).

Based on the record and the evidence, petitioner has failed to establish that his use of the home office satisfies one of the three business-use exceptions under section 280A(c)(1). Indeed, petitioner claimed deductions for the furniture and similar office items, the computer and peripheral equipment, the

---

[10] If business use of listed property falls to 50 percent or less, then it is subject to the expensing and depreciation recapture rules of secs. 179(d)(10) and 280F(b)(2), respectively.

facsimile machine and stand, and electricity without specifically claiming a "home office".

Since petitioner's home office does not meet the requirements of section 280A(c)(1), it follows that the computer and the peripheral equipment are not excepted from the section 280F(d)(4)(B) definition of listed property. Therefore, to depreciate such items petitioner must satisfy the strict section 274(d) substantiation requirements. Moreover, he must establish that business use for such equipment exceeds 50 percent. Sec. 280F(b)(3).

Based on his testimony and the evidence introduced at trial, petitioner failed to establish the percentage of business use for the computer and peripheral equipment. Rather, at trial petitioner merely asserted "these are office expenses" and then proceeded to name each item purchased and the amount purportedly incurred for it. Furthermore, even if petitioner had established the business-use percentage for such items, he failed to satisfy all of the stringent section 274(d) substantiation requirements.

The facsimile machine and the stand are not subject to the listed property rules. Thus, to claim depreciation under section 167, petitioner must establish that he actually purchased and used such assets in his business during the taxable years in issue. Secs. 162, 167(a); secs. 1.162-1, 1.167(a)-1, Income Tax Regs. At trial, petitioner testified that he purchased a facsimile machine for use in his business. However, we are not

convinced by petitioner's general statements and the evidence submitted at trial that he actually incurred such an expense. To substantiate the purchase of the facsimile machine, petitioner submitted a generic American Express receipt for $640 from Radio Shack. However, that receipt does not specify the item charged, and petitioner simply wrote in "fax machine". Thus, petitioner has failed to establish that he actually purchased a facsimile machine. Accordingly, we sustain respondent's determination with respect to this item. However, with respect to the cost of the facsimile stand, we allow petitioner to deduct $130, since he submitted a bill for this amount which shows a description of the item purchased. Furthermore, we can reasonably infer that petitioner used the facsimile stand in his business. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

With respect to the telephone, chairs, desk lamp, computer desk, and computer stand, we note that Congress, in enacting section 280A, intended to preclude expenses "otherwise considered nondeductible personal, living, and family expenses * * * [from being] converted into deductible business expenses" merely because they have some connection to a business activity. S. Rept. 94-938 at 147 (1976), 1976-3 C.B. (Vol. 3) 49, 185. Prior to the enactment of section 280A, there was congressional concern that some taxpayers were deducting personal expenditures under the guise of business use of the home. Hamacher v. Commissioner, 94 T.C. 348, 357 (1990) (citing Green v.

Commissioner, 707 F.2d 404, 407 (9th Cir. 1983)). Accordingly, under present law, use of a home office that fails to qualify under section 280A is to be treated as personal in nature for purposes of deducting any related expenses. Id. at 357. Thus, since petitioner failed to prove that any portion of his residence was used exclusively for business, and failed to prove what portion, if any, of the costs of the telephone, chairs, desk lamp, and computer stand was connected to his business, he is precluded from deducting such costs. Sec. 262.

Finally, under section 280A(a), utilities are considered an expense incurred with respect to the use of a dwelling unit. Accordingly, petitioner is barred from deducting one-third of the cost of utilities allocable to his home office, because he failed to establish that the office was exclusively used on a regular basis for one of the three purposes under section 280A(c)(1), or that one-third would be the appropriate allocation.

E. Office Expenses and Supplies

For 1991 and 1992, petitioner deducted $1,535 and $1,734 in supplies and office expenses for the cost of business checking fees, film and developing, photocopies, blank videos, and miscellaneous supplies. Respondent disallowed all of the expenses except for $118 claimed in 1991, representing the cost of typewriter services, stationery, legal pads, fax paper, and typing pads.

Petitioner's testimony regarding these expenses was vague, general, and dubious. Petitioner alleges that he did not bill clients of his investigation business for such charges because he was trying to build his business. The invoices submitted at trial, however, establish that petitioner did indeed bill his clients for equipment, supplies, and photographs. The fact that some receipts have job numbers further supports our finding that petitioner was keeping track of expenses to bill clients. Moreover, in 1991 petitioner claimed over $200 in photo expenses. However, in many instances petitioner deducted these expenses twice by submitting both a photo receipt and a photo envelope for the same item and then claiming them as two separate expenses.

For 1992, petitioner deducted $120 ($10 per month times 12 months) for business checking fees. Petitioner did not submit bank statements to substantiate this expense. Accordingly, we sustain respondent's disallowance of deductions claimed for supplies and office expenses.

F. Travel, Meals, and Entertainment

For 1991 and 1992, petitioner deducted $1,589 and $2,448, respectively for travel, and $2,867 and $2,156, respectively, for meals and entertainment. Respondent disallowed these amounts for lack of substantiation. We find for respondent on this matter.

A taxpayer is required under section 274(d) to substantiate entertainment expenses by adequate records to corroborate his or her own testimony as to: (1) The amount of the expense, (2) the

time and place the expense was incurred, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of each expense incurred. Sec. 1.274-5T(b)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985). See supra pp. 9-10.

At trial, petitioner's testimony regarding his travel, meal, and entertainment expenses was evasive, and in many instances implausible. For example, in response to a question asked by this Court as to whether petitioner was reimbursed for a hotel bill at the Victoria Inn in Monterey, which allegedly was incurred for surveillance purposes, he evaded the question by responding: "I just include my hourly rate on them." Petitioner was then asked whether this response implied that he incurred such hotel and meal expenses for business purposes without reimbursement from his clients. Petitioner replied: "If I didn't eat the business, pretty soon [the clients] were going to somebody else and I was getting absolutely nothing." Petitioner's statement is not credible. Moreover, the evidence submitted at trial establishes that in many instances, petitioner did bill his clients for meals, lodging, and mileage. Whether such expenses were reimbursed by petitioner's clients or were personal expenses, they are not deductible.

Furthermore, petitioner's evidence is inconsistent. For example, he submitted two checks in connection with the same trip to Sun Valley, which he allegedly made for surveillance purposes.

One check is a payment to a "Nita Mott" on January 12, 1991, which he testified was paid "to get a special room" in the hotel at Sun Valley to facilitate his surveillance efforts. The other check is for $591 and drawn on Mrs. Whalley's personal account. This check, which is dated November 15, 1991, was supposedly payment for the Sun Valley trip. Petitioner, however, allegedly made that trip nearly 10 months earlier in January of 1991. When petitioner was then asked whether he was testifying that he "went to Sun Valley in January of 1991 and * * * [his] wife paid for that in November of 1991", he responded: "No, the actual trip was in 1992." Petitioner's testimony is dubious regarding this matter. The record likewise fails to substantiate the expenses claimed by petitioner for 1992.

Finally, with respect to petitioner's alleged investigatory interviews, they seem to always be connected with expensive meals for which he generally provided few names and vague explanations of business purpose. Furthermore, nothing in the record indicates contemporaneous record keeping.

Accordingly, petitioner has failed to meet the requirements of section 274(d), and we, therefore, sustain respondent's determination for the taxable years in issue.

G. Business Promotion Expenses

For 1991 and 1992, petitioner deducted $2,039 and $165, respectively, for alleged business promotions paid to various individuals and associations for items such as the Rotary Club

- 31 -

barbecue.  Respondent disallowed these amounts in their entirety.

Many of the alleged promotion expenses claimed by petitioner are actually entertainment expenses, subject to the strict substantiation requirements of section 274(d).  See supra pp. 9-10.  For 1991 and 1992, petitioner's alleged business promotions include a $500 check made out to a "Dick Howard" for a statue petitioner purchased at a Rotary auction which he attended.  Petitioner alleges that this purchase was related to his business because he donated the statute back to the Rotary Club in TSI's name for re-auctioning, which petitioner asserts created both name recognition and goodwill for TSI.  The other items deducted by petitioner include sponsorship fees to various rodeos, tickets to a benefit, golf tournament fees, and similar expenses.

Petitioners have failed to show how any of the expenses incurred for such activities actually afforded petitioner contacts with possible clients or had any direct relationship to the production of income.  Ferrer v. Commissioner, 50 T.C. at 185.  Thus, we affirm respondent's determination on this issue.

H.  Computer Charges

For 1991 and 1992, petitioner deducted computer charges of $1,051 and $1,598, respectively.  Respondent disallowed these expenses in full.  On this issue, we find for petitioner.

At trial, petitioner testified that these expenses, which were incurred in connection with his investigation and

surveillance business, represented computer fees paid to on-line service providers for individual background check information, including addresses, Social Security numbers, credit information, and so on. The checks submitted by petitioner at trial substantiate that such expenses were incurred, and they are consistent with his trial testimony. Based on the record, we find that these amounts were ordinary and necessary expenses incurred by petitioner in carrying on his business under section 162.

I. <u>Postage</u>

For 1991 and 1992, petitioner deducted postage in the amounts of $394 and $402, respectively. Respondent completely disallowed these expenses.

In many instances, petitioner failed to show the business purpose for the postage expense claimed. For example, in 1991 petitioner purchased 600 stamps at 29 cents apiece; however, the record is silent as to the use of the stamps in petitioner's business. In 1992, petitioner conceded that he posted the newsletter for the Rotary group. However, petitioner has not established that this newsletter postage is a business expense. These examples are indicative of the entire record regarding this matter.

Nevertheless, it is still reasonable to infer that petitioner incurred postage costs for TSI. At trial, petitioner submitted bills which we know he mailed out to clients.

Accordingly, we allow petitioner to deduct $50 annually for postage.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

J. Dues and Subscriptions

For 1991 and 1992, petitioner claimed dues and subscriptions of $1,211 and $712, respectively.  Respondent disallowed these amounts, except for $100 incurred by petitioner in 1991 to renew his private investigator's license, $125 paid both in 1991 and 1992 to the California Association of Licensed Investigators, and two payments of $20 each made in 1992 to the Northern California Fraud Investigators Association.

For 1991, petitioner deducted membership fees to the Rotary Club, as well as to the Office Club, Costco, and Price Club, which are all retail stores, and the Alameda Golf Club.  For 1992, petitioner deducted membership fees to the Rotary Club, the Alameda County Leaders Council, and the Retired Peace Officers Association.  Petitioner did not explain the facts and circumstances of such expenses, nor is the business purpose of these expenses self-explanatory from any business relationship of petitioner with the expenses incurred.  Lattin v. Commissioner, T.C. Memo. 1995-233.  Moreover, petitioner is unable to trace any of his clients directly to these contacts.

Thus, we find that these items are nondeductible personal expenses under section 262.

The balance of the 1991 and 1992 deductions are for various newspapers, magazines, and legal books, such as Investigative

News and the Asset Protection Guide.  Petitioner provided canceled checks for these items.  Petitioner's testimony establishes that he used these materials either as resources or to stay abreast of trends in the investigation and surveillance industry.  Therefore, petitioner may deduct $665 in 1991 and $181 in 1992 for the cost of these items.

K. Laundry and Linen

For 1991 and 1992, petitioner deducted $225 and $233, respectively, representing the cost of cleaning petitioner's suits and shirts.  This is clearly a personal nondeductible living expense under section 262.

L. Outside Services

For 1991 and 1992, petitioner deducted $4,100 and $2,920, respectively, for outside services, which respondent disallowed in full.  Petitioner testified that these were amounts paid to 15 different informants, or "snitches", to obtain information. Petitioner paid these amounts in cash; he did not issue Forms 1099 to the recipients, nor did he provide any receipts or other documentation to support the deduction for the taxable years in issue.  We find for respondent on this matter.

M. Telephone

For 1991 and 1992, petitioner deducted $1,787 and $1,433, respectively, for cellular phone expenses allegedly incurred in

connection with his business. The cellular phone,[11] which is installed in petitioner's van, is not listed under TSI. Petitioner did not provide any telephone bills for the amounts in issue to establish what portion, if any, is business related. We also note that the telephone bills submitted in connection with deductions claimed for petitioner's farm activity, TSR, are surprisingly low, less than $20 per month. This leads to the conclusion that petitioners were making personal calls from the so-called business phone. Accordingly, we find for respondent since petitioner failed to meet his burden of proof. Sec. 162.

Issue 4. Schedule F Farm Activity

Respondent determined that petitioners did not engage in their farm activity with the intent to earn a profit. In accord with section 183, respondent disallowed the losses claimed on petitioners' Schedule F, resulting from farm expenses of $28,327 and $37,747 for 1991 and 1992, respectively. Petitioners assert that they entered into and carried on their farm activity in good faith and with the intent to earn a profit, and therefore the losses arising from the farm activity are allowable.

Section 183(a) provides that if an activity is not engaged in for profit, "no deduction attributable to such activity shall

--------

[11] A cellular phone is listed property under sec. 280F(d)(4)(A)(v).

be allowed", except as otherwise provided in section 183(b).[12]
Section 183(c) defines an activity not engaged in for profit as
"any activity other than one with respect to which deductions are
allowable for the taxable year under section 162 or under
paragraph (1) or (2) of section 212."

The test for determining whether an individual is carrying
on a trade or business under section 183 is whether the
taxpayer's actual and honest objective in engaging in the
activity is to make a profit. Dreicer v. Commissioner, 78 T.C.
642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir.
1983); sec. 1.183-2(a), Income Tax Regs. While a taxpayer's
expectation of profit need not be reasonable, there must be a
good faith objective of making a profit. Allen v. Commissioner,
72 T.C. 28, 33 (1979); sec. 1.183-2(a), Income Tax Regs.

To determine whether the requisite profit objective exists,
we examine a variety of facts. Engdahl v. Commissioner, 72 T.C.
659, 666 (1979); sec. 1.183-2(a), Income Tax Regs. Thus, the
determination of whether the requisite profit objective exists
depends upon all the surrounding facts and circumstances of the

---

[12]    Sec. 183(b)(1) provides that deductions which would be
allowable without regard to whether such activity is engaged in
for profit shall be allowed.  Sec. 183(b)(2) provides that
deductions which would be allowable only if such activity is
engaged in for profit shall be allowed "but only to the extent
that the gross income derived from such activity for the taxable
year exceeds the deductions allowable by reason of paragraph
(1)."

case.  Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit.  These factors include:  (1) The manner in which the taxpayers carried on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayers in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayers; and (9) any elements indicating personal pleasure or recreation. Although these factors are helpful in ascertaining a taxpayer's objective in engaging in the activity, no single factor, nor the existence of even a majority of the factors, is controlling; rather, the facts and circumstances of the case remain the primary test.  Keanini v. Commissioner, supra at 47.  To aid in our determination, we will consider the factors in the regulation seriatim.

A. Manner of Carrying On the Activity

Conducting an activity in a businesslike manner may indicate that a taxpayer has the necessary profit objective.  Engdahl v.

Commissioner, supra at 666-667. For example, keeping books and records related to an activity may be indicative of a profit objective. Id.; sec. 1.183-2(b)(1), Income Tax Regs. In addition to maintaining records, advertising an activity may indicate a profit objective. Engdahl v. Commissioner, supra. Also, adapting new techniques and abandoning inefficient methods may support the conclusion that the taxpayer possessed the requisite profit objective. Allen v. Commissioner, supra at 35; sec. 1.183-2(b)(1), Income Tax Regs.

Here, petitioners failed to conduct their farm activity in a businesslike manner. They did not maintain complete and accurate books, nor did they keep contemporaneous records of receipts and expenditures arising from their farm activity. In many instances they failed to provide respondent with the evidence of payment in the form of canceled checks, invoices, or receipts for expenses claimed, or evidence of business purpose. Petitioners' notations on checks as to the business purpose of such checks were written after the fact; i.e., at the end of the year in which the expenses were allegedly incurred. In fact, in many instances, petitioner was not quite sure what went into some of the expenses claimed.

Advertising an activity may be indicative of a profit motive. In 1991, however, the only advertising expense incurred by petitioners was for a local newspaper ad listing a cockatiel and a ram for sale. In 1992, petitioners did not advertise

anything for sale from their farm. Furthermore, petitioners' ranch had an unlisted phone number.

Petitioners also failed to show that they intended to change their operating methods in an effort to increase profitability. At trial, petitioner made a vague statement about his desire to expand, reduce his expenses, and leave a profitable business to his heirs. However, he was unable to articulate any specific details regarding new techniques that he intended to adapt or inefficient methods he intended to abandon with respect to his farm activity. Accordingly, this factor favors respondent.

B. Expertise of Taxpayer or Advisers

The fact that a taxpayer studies the accepted business, economic, and scientific practices associated with the activity, or consults with experts, may help demonstrate a profit objective. Engdahl v. Commissioner, supra at 668; sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner completed the equivalent of 3 years of college. He did not take any farming or animal husbandry courses in college; however, from 1988 through the time of trial, he attended seminars at the University of California at Davis covering a variety of animal-related issues, such as breeding, raising, feeding, and medically caring for animals. In addition, petitioner stayed abreast of developments in the farming and breeding industry by reading industry books and publications, such as Track and Trail and National Press Publication. Although

petitioners did not seek advice regarding their farm activity, this fact is not necessarily determinative of a lack of profit motive. The evidence shows that petitioners made an effort to acquire the knowledge necessary to make their farm activity profitable, and we find in their favor with respect to this factor.

C. Time and Effort Expended in the Activity

A taxpayer's devotion of substantial time and effort to an activity, particularly if there are no substantial personal or recreational elements associated with the activity, may indicate the requisite profit objective. The fact that only a limited amount of time is so devoted does not necessarily give rise to a contrary inference. Haladay v. Commissioner, T.C. Memo. 1990-45; Archer v. Commissioner, T.C. Memo. 1987-70; sec. 1.183-2(b)(3), Income Tax Regs.

In this case, petitioners did not establish that they devoted a substantial amount of time to their farm activity. Mrs. Whalley is a full-time police officer and student, and petitioner testified that back problems prevented him from doing a substantial amount of work. There is evidence that the farm activity was engaged in primarily for personal purposes. The evidence shows that petitioners deducted substantial costs to train their daughter to ride and participate in equestrian activities. For example, petitioners built and deducted the cost of an arena for their daughter's riding practice. They also

claimed substantial deductions for the cost of horse show equipment, costumes, and material. However, there is no persuasive evidence establishing how all of these expenses either produced or would produce income. In short, petitioners' failure to devote a considerable amount of time to the farm activity combined with the fact that they derived substantial personal pleasure from it suggests that the activity was not engaged in for profit.

D. Expectation That Assets May Appreciate

An expectation that the appreciation of assets used in an activity will produce an overall profit when netted against the losses from that activity may indicate the requisite profit objective. Sec. 1.183-2(b)(4), Income Tax Regs. There must be a bona fide expectation that appreciation will produce a profit at some time in the future. Allen v. Commissioner, 72 T.C. at 36; Engdahl v. Commissioner, 72 T.C. at 668 n.4; sec. 1.183-2(b)(4), Income Tax Regs.

On petitioners' Schedules F for 1991 and 1992, they showed farm income of $475 and $1,050, respectively. Petitioner testified that he became interested in horses after realizing that such animals were a valuable asset having appreciation potential if properly exhibited at horse shows or used for breeding purposes. In 1992, petitioner owned three horses, one of which was allegedly a stallion that he bought for breeding purposes. At one point during the trial petitioner noted

hypothetically that "you can buy a horse for $10,000 * * * start breeding it, selling its babies for an equal amount and after you sold the first one you could recapture your loss for the initial investment." This statement, taken on its face, seems to support petitioner's assertion that he expected his stallion to appreciate in value because it could be used for breeding purposes. Petitioner, however, never owned a stallion that could potentially appreciate. In fact, according to a veterinarian's soundness examination given to the animal prior to petitioner's purchase, it was determined that the horse was not actually a stallion as petitioner asserts, but rather a gelding. Petitioner also testified that he could generate capital gain from the sale of his horses, since they would appreciate from being displayed at horse shows. However, petitioners had no income from either selling or breeding horses. Accordingly, we find that petitioners' horses could not be expected to significantly appreciate in value.

E. Taxpayer's Success in Other Activities

We have recognized that a taxpayer's success in other business activities may indicate a profit motive, despite a currently unprofitable activity. Hoyle v. Commissioner, T.C. Memo. 1994-592; sec. 1.183-2(b)(5), Income Tax Regs. During the years in issue, petitioner, a retired police officer, is also reporting substantial losses on his Schedules C from another business activity known as TSI. The losses from that activity

were \$21,022 for 1991 and \$27,724 for 1992.  We find that this factor does not support petitioner's position.

F. <u>History of Income or Losses From the Activity</u>

A history of losses over an extended period may indicate the absence of a profit objective.  <u>Allen v. Commissioner</u>, <u>supra</u> at 34.  However, although a long history of losses is an important criterion, it is clear that this factor is not necessarily determinative of a lack of a profit objective.  E.g., <u>Engdahl v. Commissioner</u>, <u>supra</u> at 669 (deductions allowed in spite of 12 straight years of losses in a horse-breeding operation).  A series of initial or startup losses does not necessarily indicate that the activity was not engaged in for profit.  <u>Id.</u>; sec. 1.183-2(b)(6), Income Tax Regs.  Moreover, losses sustained because of unforeseen or fortuitous circumstances beyond a taxpayer's control do not indicate that the activity was not engaged in for profit.  <u>Engdahl v. Commissioner</u>, 72 T.C. at 669.

In this case, petitioners have engaged in their farm activity for approximately 8 years.  During those years petitioners' farm activity never made a profit.  Petitioners' losses were not due to unfortunate events beyond their control but resulted from their deduction of expenses which in many instances were personal in nature.  For example, petitioner testified that in 1991 he deducted \$244 worth of wine that he

purchased for customers who bought lamb from his ranch, even though he reported Schedule F income of only $475 for 1991. The losses arising from such deductions were used to offset Mrs. Whalley's significant salary from her employment as a police lieutenant. Based on the record and the testimony presented at trial, petitioners' claim that the Schedule F losses were incurred in an activity having a bona fide profit motive exceeds the bounds of credibility.

G. Amount of Occasional Profits Earned, If Any

If an activity generates only small, infrequent profits and typically generates large losses, the taxpayer conducting the activity may be less likely to have a profit objective. Golanty v. Commissioner, 72 T.C. 411, 427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b)(7), Income Tax Regs.

Petitioners' farm activity has never shown a profit. In fact, petitioners' expenses have greatly exceeded their revenue. For example, for the taxable years in issue, their revenues from the activity were between $475 and $1,050, respectively, while their expenses were between $28,327 and $37,747, respectively. In short, this factor weighs against petitioners' assertion that they operated the farm activity with the intent to turn a profit.

H. Taxpayer's Financial Status

Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit.

Engdahl v. Commissioner, supra at 669; sec. 1.183-2(b)(8), Income Tax Regs.  The rationale for this rule, in part, is that a taxpayer with substantial income from sources unrelated to the activity can more easily afford to operate the activity as a hobby and may seek to use the losses from the activity to offset the income from other sources.

During the taxable years at issue, Mrs. Whalley earned wages of $71,425 for 1991 and $78,649 for 1992.  Petitioner reported a nontaxable pension of $38,872 for 1991 and $32,963 for 1992.  Moreover, for both years, no Federal income tax was withheld according to the Forms W-2 issued for Mrs. Whalley by the Hayward Police Department.  Given the facts presented, the obvious conclusion is that petitioners intended that they would reduce or eliminate their tax liability because of their claim of alleged losses.  We find that petitioners' substantial income from other sources coupled with the fact that they failed to claim any withholding for the years in issue indicates a lack of profit objective.

I. Elements of Personal Pleasure

That a taxpayer receives personal or recreational benefits from an activity may indicate that the taxpayer is not engaging in the activity for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner's testimony throughout the trial consistently points to his daughter's equestrian accomplishments.  He indicated that his daughter rides a variety of their horses and

rides in Western pleasure events, English riding events, and trail riding events for which she has won awards.  The majority of the Schedule F expenses for the years at issue were attributable to his daughter's training, attire, and participation in shows.  This fact, coupled with the other factors enumerated above, indicates that petitioners did not engage in the farm activity for profit, but for personal gratification.

Based on the foregoing and considering all the facts and circumstances, we conclude that petitioners did not have an actual and honest profit objective for the years in issue.

Issue 5.  Accuracy-Related Penalty

Respondent determined in the notice of deficiency that petitioners are liable for the accuracy-related penalty imposed by section 6662(a) for 1991 and 1992, and that the entire underpayment of tax for each such year was due to negligence.

Section 6662(a) imposes a 20-percent penalty on the portion of the underpayment attributable to any one of various factors, one of which is negligence.  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1),

Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Section 6664(c)(1), however, provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent's determination of negligence is presumed to be correct, and petitioners bear the burden of proving that the accuracy-related penalty does not apply. Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Petitioners have not presented evidence to establish that there was reasonable cause for their position with respect to the underpayments of tax, nor that they acted in good faith with respect to such underpayments. At first glance, petitioners appear to have put their records together very well. However, careful scrutiny of the documentary evidence presented and petitioner's trial testimony proves this assumption wrong. We found numerous instances where petitioners took multiple deductions for the same item, claimed deductions for items that

they were not entitled to claim, and failed to establish that the expenses incurred during 1991 and 1992 were ordinary and necessary costs of carrying on a trade or business pursuant to section 162.  Thus, we find that petitioners have failed to meet their burden of proof with respect to the accuracy-related penalty.  Accordingly, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).  Rule 142(a).

To reflect the foregoing,

Decision will be entered

under Rule 155.

<u>Appendix A</u>

**1991 Schedule A expenses**

Total misc. itemized deductions          $8,306
  (After applying 2% AGI floor)


      Tax prep. fee          $230
      Union/prof dues        1,863
      Uniforms/equip.        1,499
      Continuing educ.       5,283


**1992 Schedule A expenses**

Total misc. itemized deductions          11,261
  (After applying 2% AGI floor)

      Tax prep. fee          $240
      Union/prof dues        2,066
      Uniforms/equip.        2,024
      Continuing educ.       7,242

<u>Appendix B</u>

**1991 Schedule C expenses**

| | |
|---|---:|
| Total expenses | $25,546 |
| | |
| Advertising | 510 |
| Bad debt | 216 |
| Car expenses | 756 |
| Depreciation | 4,100 |
| Insurance | 587 |
| Legal and professional fees | 123 |
| Office expenses | 1,444 |
| Supplies | 1,535 |
| Travel expenses | 1,589 |
| Meals and entertainment | 2,867 |
| Utilities | 912 |
| Business promotion expenses | 2,039 |
| Computer charges | 1,051 |
| Delivery and freight | 394 |
| Dues and subscriptions | 1,211 |
| Laundry and linen | 225 |
| Licenses | 100 |
| Outside services | 4,100 |
| Telephone expenses | 1,787 |

**1992 Schedule C expenses**

| | |
|---|---:|
| Total expenses | $32,616 |
| | |
| Advertising | 317 |
| Bad debt | 150 |
| Car expenses | 8,786 |
| Depreciation | 4,800 |
| Insurance | 545 |
| Legal and professional fees | 43 |
| Office expenses | 3,385 |
| Supplies | 1,554 |
| Travel expenses | 2,448 |
| Meals and entertainment | 2,156 |
| Utilities | 957 |
| Business promotion expenses | 165 |
| Computer charges | 1,598 |
| Delivery and freight | 402 |
| Dues and subscriptions | 712 |
| Laundry and linen | 233 |
| Outside services | 2,920 |
| Small tools | 12 |
| Telephone expenses | 1,433 |

Appendix C

**1991 Schedule F expenses**

| | |
|---|---:|
| Total expenses | $28,327 |
| | |
| Chemicals | 214 |
| Machine work | 1,142 |
| Depreciation | 1,214 |
| Feed | 4,183 |
| Fertilizer | 135 |
| Freight and trucking | 1,636 |
| Gasoline, fuel, and oil | 401 |
| Interest | 380 |
| Labor | 495 |
| Equipment rentals | 442 |
| Repairs and maintenance | 959 |
| Seeds and plants | 393 |
| Supplies purchased | 11,434 |
| Utilities | 912 |
| Vet. fees, breeding and medicine | 1,621 |
| Telephone expenses | 71 |
| Advertising | 459 |
| Replenishment | 2,000 |
| Dues and subscriptions | 236 |

**1992 Schedule F expenses**

| | |
|---|---:|
| Total expenses | $37,747 |
| | |
| Chemicals | 79 |
| Conservation expenses | 121 |
| Machine work | 2,502 |
| Depreciation | 2,427 |
| Feed | 4,346 |
| Fertilizer | 355 |
| Freight and trucking | 3,512 |
| Gasoline, fuel, and oil | 413 |
| Interest | 130 |
| Labor | 741 |
| Equipment rentals | 32 |
| Repairs and maintenance | 1,631 |
| Storage and warehousing | 574 |
| Supplies | 13,837 |
| Taxes | 41 |
| Utilities | 1,001 |
| Vet. fees, breeding, and medicine | 1,011 |
| Telephone expenses | 68 |
| Advertising | 184 |

| | |
|---|---:|
| Business promo. expenses | 1,775 |
| Butchering/kill | 90 |
| Replenishment | 2,500 |
| Dues and subscriptions | 377 |